## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | Case No. 25-16599-KHT |
| | ) | |
| SPYRIDON TSAPARAS, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| NHC LLC, | ) | Adv. No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SPYRIDON TSAPARAS, | ) | |
| | ) | |
| Defendant. | ) | |

### COMPLAINT FOR NONDISCHARGEABILITY OF DEBT

NHC LLC ("**NHC**"), by and through undersigned counsel, submits this complaint for nondischargeability of debt against Spyridon Tsaparas (the "**Debtor**"), and states as follows:

### PARTIES

1. NHC is a Florida limited liability company with its principal place of business in Miami Beach, Florida.

2. The Debtor an individual who resides in Kansas and who is the debtor in the above-captioned bankruptcy case (the "**Bankruptcy Case**").

### JURISDICTION AND VENUE

3. This Complaint is timely under Rule 4007(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the *Notice of Chapter 7 Bankruptcy Case—No Proof of Claim Deadline* [Dockt No. 6], which fixed a filing deadline of January 12, 2026 for any complain challenging the dischargeability of debts.

4. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b) and D.C.COLO.CivR. 84.1(a).

5. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).

6. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409 because this proceeding arises under and in connection with a case pending in this district.

7. Pursuant to Bankruptcy Rule 7008, NHC consents to entry of final orders or judgments by the Court.

8. The Debtor consents to the entry of final orders or judgments by the Court.

## FACTUAL ALLEGATIONS

### The Project and the Debtor's Fraudulent Acts

9. On April 16, 2018, NHC and Centaur Construction Company Inc. ("**Centaur**") entered into a contract (the "**Contract**") for Centaur to provide services in connection with the design and construction of the NOBU Hotel Chicago (the "**Project**").

10. During the pendency of the Contract (and thereafter), the Debtor was the Chief Executive Officer of Centaur.

11. Pursuant to the Contract, Centaur and NHC agreed that the contract price of the services provided by Centaur was subject to a "guaranteed maximum price" of $48,257,000.00.

12. In or around May of 2018, Centaur began construction of the Project.

13. Centaur requested on various occasions that NHC submit progress payments to Centaur for design and construction work that the Debtor and Centaur represented had been performed by Centaur pursuant to the Contract.

14. The total amount of those payments was $47,757,000.00.

15. Unbeknownst to NHC, the Debtor's representations that Centaur had performed all work for which it requested payment from NHC were false.

16. Centaur did not perform all of the work for which it had requested payment from NHC.

17. Centaur hired numerous subcontractors to perform work on the Project and agreed to change orders with subcontractors amounting to millions of dollars without informing NHC.

18. At the time the Debtor falsely represented to NHC that Centaur had performed all work for which it had requested payment from NHC, the Debtor knew that his representations to NHC were false.

19. The Debtor made his false representations to NHC for the purpose of inducing NHC to provide progress payments to Centaur so that the Debtor could utilize all or portions of such payments for personal use or to fund other Centaur projects or expenses.

20. Such progress payments would have been due to Centaur under the Contract only if Centaur had in fact performed the work for which the progress payments were sought, as well as complied with the other requirements in the Contract.

21. NHC reasonably relied on the Debtor's false representations in making progress payments to Centaur because NHC reasonably believed that Centaur had completed the work entitling Centaur to such progress payments.

22. Due to the Debtor's false statements, NHC made total payments of $48,257,000, the guaranteed maximum price under the Contract.

23. Subsequent to making these payments to Centaur, NHC learned that: (i) Centaur had not completed all of the work for which it sought these payments, (ii) numerous subcontractors hired by Centaur were collectively owed millions of dollars for work performed on the Project

3

without NHC's knowledge or permission, (iii) such subcontractors remained unpaid by Centaur and (iv) instead of using NHC's payments to perform work on the Project (or fully compensate the subcontractors who performed work on the Project), the Debtor utilized millions of dollars from NHC's payments for personal use or to fund other Centaur projects and/or expenses.

24. For example, on May 2, 2019, the Debtor met with Rodrigo Chapur, NHC's representative, in Los Cabos, Mexico, during which the Debtor stated to Mr. Chapur that Centaur was three-quarters of a million dollars over budget and that Centaur would cover this extra cost.

25. During this meeting, the Debtor also informed Mr. Chapur that the schedule of the completion of the Project would be affected by "maybe a month or two at the max."

26. The Debtor knew that these statements were false at the time he made them.

27. Despite knowing that the Project was substantially more than $750,000 over budget and that the completion of the Project would be delayed more than two months, the Debtor made these false statements to induce NHC to continue making progress payments to Centaur under the Contract.

28. NHC relied on these false statements by making additional progress payments to Centaur under the reasonable belief that additional funds were owed to Centaur under the Contract.

29. Additionally, on May 19, 2019, the Debtor, on behalf of Centaur, sent an invoice by email to Mr. Chapur stating that Centaur had earned a total of $46,881,761.24 for construction of the Project, and that based on this amount earned, an additional $4,896,522.13 was due by NHC to Centaur under the Contract by May 19, 2019.

30. At the time the Debtor sent this invoice to Mr. Chapur, the Debtor knew that Centaur had not completed construction of the Project entitling Centaur to anywhere near $46,881,761.24 in total payments under the Contract.

31. The Debtor sent the May 19, 2019 invoice to Mr. Chapur in order to induce NHC to make additional progress payments to Centaur under the Contract.

32. NHC reasonably relied on the May 19, 2019 invoice by making additional progress payments to Centaur.

33. Furthermore, the May 19, 2019 email from the Debtor to Mr. Chapur attached a Contractor's Application for Payment and Contractor's Affidavit.[1] (Ex. 1.)

34. In that application, Centaur falsely represented that it had "earned" and "completed" $46,881,761.24 for construction work on the Project, out of a total contract price of $48,257,000 as of April 30, 2019, and that an additional $4,896,522.13 was due by NHC under the Contract.

35. Similarly, the affidavit falsely represented that there was a "balance due" of $1,375,238.76 by NHC under the Contract and that "[t]here are no other contracts for said work outstanding, and that there is nothing due to become due to any person for materials, labor or other work of any kind done or to be done upon or in connection with said work other than above stated."

36. This representation was patently false, as Centaur had engaged additional, undisclosed subcontractors to perform work on the Project who were not listed in this affidavit and who had not been paid.

37. The Debtor made these knowingly false representations for the purpose of inducing NHC to reasonably rely on these representations to make further progress payments to Centaur, which NHC in fact did.

---

[1] A true and correct copy of the Contractor's Application for Payment and Contractor's Affidavit are attached hereto as **Exhibit 1**.

38. On July 24, 2019, the Debtor falsely represented by email to Mr. Chapur that: (i) the "[t]otal amount above the contracted sum" to complete the Project was "$6,156,000.00"; (ii) the "project will not suffer any liens" from subcontractors; and (iii) the Debtor and Centaur would be paying the rest of the "trades" on July 25, 2019 "so the site will receive the manpower it needs to catch up."[2] (Ex. 2.)

39. The Debtor made these knowingly false statements to induce NHC to refrain from immediately terminating the Contract based on Centaur's breaches of the Contract and the Debtor's fraud.

40. NHC reasonably relied on these false statements by not terminating the Contract until well after July 24, 2019.

41. On multiple occasions, the Debtor, in order to avoid payment to subcontractors and increase NHC's liability, wrote on behalf of Centaur (or other entities) and/or caused Centaur (or other entities) to write checks to one or more subcontractors knowing that there were insufficient funds in the account associated with the checks.

42. By way of example, on March 25, 2019, Centaur subcontractor POROS USA wrote a check in excess of $162,000 to downstream subcontractor InnVantage when there were insufficient funds in the account associated with the check.

43. POROS is affiliated with the Debtor in that it is a "dba" of Global Logistics & Procurement Company, LLC, of which the Debtor was a manager.

---

[2] A true and correct copy of the July 24, 2019 email from the Debtor to Mr. Chapur is attached hereto as **Exhibit 2**.

44. InnVantage was eventually paid through Global Logistics & Procurement Company's bank account, demonstrating that the Debtor was comingling Project funds with the funds of their other businesses.

45. On August 23, 2019, the Debtor and Mr. Chapur met in person to discuss NHC's concerns with Centaur's failure to perform under the Contract.

46. During that meeting, the Debtor admitted to Mr. Chapur that Centaur, at the Debtor's instruction, had diverted approximately $7–8 million of NHC's payments to personal use or to fund other Centaur projects and/or expenses.

47. By the time NHC initiated a lawsuit against the Debtor and Centaur, Centaur, despite NHC having paid $48,257,000.00 under the Contract, had not substantially completed construction of the Project.

48. Centaur did not pay all subcontractors who performed work on the Project within seven days of receiving from payment from NHC in violation of the Contract.

49. To the contrary, numerous subcontractors hired by Centaur to perform work on the Project remained unpaid by Centaur at the time of the lawsuit.

50. Even worse, several of those subcontractors served notices of mechanics liens on NHC relating to their unpaid work on the Project.

51. At no time during Centaur's work on the Project did Centaur and NHC execute any written change orders that would increase the maximum guaranteed price of the Project under the Contract or allow Centaur additional time to substantially complete construction of the Project in violation of the Contract.

52. Neither Centaur nor the Debtor provided NHC with notice of any change orders entered into between Centaur and any subcontractor(s) hired by Centaur to perform work on the Project in violation of the Contract.

53. The Debtor kept Centaur insufficiently capitalized and commingled Centaur's funds with his own funds and/or used Centaur funds for his own personal purposes.

54. By fraudulently obtaining payments under the Contract from NHC to use for personal use or to fund other Centaur projects and/or expenses, the Debtor diverted corporate assets of Centaur to the detriment of NHC and the subcontractors to whom Centaur owed payment for services performed on the Project.

55. By fraudulently obtaining payments under the Contract from NHC to use for personal use or to fund other Centaur projects and/or expenses, the Debtor operated Centaur as a mere façade for himself as the dominant officer of the company.

56. The Debtor and Centaur are alter egos of one another.

## The District Court Action

57. On September 23, 2019, NHC initiated an action against, in relevant part, the Debtor and Centaur before the United States District Court for the Northern District of Illinois (the "**District Court**") in the case styled, *NHC LLC v. Centaur Constr. Co.*, No. 19-cv-06332 (N.D. Ill. Sept. 23, 2019) (the "**District Court Action**").[3]

---

[3] Peter Alexopoulos, President of Centaur, was also a party to the District Court Action. This nondischargeability action has nothing to do with Mr. Alexopoulos.

8

58. On January 28, 2020, NCH filed its *Third Amended Complaint* [District Court Action, ECF No. 26] (the "**Complaint**"), asserting, in relevant part, fraud claims against the Debtor and Centaur, and seeking compensatory and punitive damages related to the same.[4] (Ex. 3.)

59. The Complaint was the operative pleading in the District Court Action.

60. On March 18, 2022, the District Court entered its *Memorandum Opinion and Order* [District Court Action, ECF No. 152] (the "**Summary Judgment Order**").[5] (Ex. 4.)

61. In the Summary Judgment Order, the District Court found that the Debtor and Centaur's comingling of personal and corporate assets was so extensive, and the Debtor's control of Centaur so absolute, that it was appropriate to pierce the corporate veil between the Debtor and Centaur, and hold them jointly and severally liable. (*See* Ex. 4 at 17–18.)

62. On August 17, 2022, the District Court published the *Instructions to the Jury* [District Court Action, ECF No. 204].[6] (Ex. 5.)

63. On August 18, 2022, following a five-day jury trial, the jury returned a verdict in favor of NHC and against the Debtor and Centaur, jointly and severally, on its breach of contract and fraud claims. *See* Minute Entry, District Court Action, ECF No. 208.

64. The jury awarded compensatory damages in favor of NHC and against the Debtor and Centaur, jointly and severally, in the total amount of $20,437,290.20, the entirety of which was attributable to the fraud claim. *See id.*

65. The jury awarded punitive damages on the fraud claim in favor of NHC and against the Debtor in the amount of $1,500,000.00. *See id.*

---

[4] A true and correct copy of the Complaint is attached hereto as **Exhibit 3**.

[5] A true and correct copy of the Summary Judgment Order is attached hereto as **Exhibit 4**.

[6] A true and correct copy of the Instructions to the Jury are attached hereto as **Exhibit 5**.

66. The jury awarded punitive damages on the fraud claim in favor of NHC and against Centaur in the amount of $630,666.00. *See id.*

67. On August 18, 2022, the District Court entered *Judgment in a Civil Case* [District Court Action, ECF No. 209] (the "**Judgment**"), which reflected the jury's verdict.[7] (Ex. 6.)

68. On March 15, 2023, the District Court amended the Judgment and entered the *Amended Judgment in a Civil Case* [District Court Action, ECF No. 228] (the "**Amended Judgment**"), which awarded (i) compensatory damages in favor of NHC and against the Debtor and Centaur, jointly and severally, in the total amount of $22,272,124.34, the entirety of which was attributable to the fraud claim; (ii) punitive damages on the fraud claim in favor of NHC and against the Debtor in the amount of $1,500,000.00; and (iii) punitive damages on the fraud claim in favor of NHC and against Centaur in the amount of $630,666.00.[8] (Ex. 7.)

69. The Amended Judgment was upheld on appeal by the United States Court of Appeals for the Seventh Circuit.[9] (Ex. 8.)

70. The Amended Judgment is a final order.

### The Bankruptcy Case

71. On October 10, 2025 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "**Bankruptcy Code**") in the above-captioned bankruptcy case.

---

[7] A true and correct copy of the Judgment is attached hereto as **Exhibit 6**.

[8] A true and correct copy of the Amended Judgment is attached hereto as **Exhibit 7**.

[9] A true and correct copy of the Final J., District Court Action, ECF No. 836 is attached hereto as **Exhibit 8**.

72. The Debtor scheduled NHC as holding a claim in the amount of $22,272,124.00.[10] *See* Docket No. 40 at 20.

73. As of the Petition Date, the total amount owed by the Debtor to NHC under the Amended Judgment is $26,780,773.60.

## COUNT I
### Determination of Nondischargeability of a Debt
### Under 11 U.S.C. § 523(a)(2)(A)

74. NHC incorporates its prior allegations as if fully set forth herein.

75. The Debtor made false representations.

76. Centaur requested on various occasions that NHC submit progress payments to Centaur for design and construction work that the Debtor represented had been performed by Centaur pursuant to the Contract.

77. Unbeknownst to NHC, the Debtor's representations that Centaur had performed all work for which it requested payment from NHC were false.

78. Centaur in fact did not perform all of the work for which it had requested payment from NHC.

79. Centaur further hired numerous subcontractors to perform work on the Project and agreed to change orders with such subcontractors amounting to millions of dollars without informing NHC.

80. At the time the Debtor falsely represented to NHC that Centaur had performed all work for which he had requested payment from NHC, the Debtor knew that his representations to NHC were false.

---

[10] Although not relevant to this nondischargeability complaint, NHC disputes both the amount and secured nature of the scheduled claim.

81. The Debtor made the representations with the intent to deceive NHC.

82. The Debtor made his false representations to NHC for the purpose of inducing NHC to provide progress payments to Centaur so that the Debtor could utilize millions of dollars from NHC's payments for personal use or to fund other Centaur projects and/or expenses.

83. Such progress payments would have been due to Centaur under the Contract only if Centaur had in fact performed the work for which the progress payment was sought, as well as complied with the other requirements in the Contract.

84. To the extent that some work that was the subject of the payment applications was completed by Centaur's subcontractors, Centaur was required to pay the subcontractors for their work rather than divert the money to other personal or business uses.

85. NHC relied on the Debtor's representations.

86. NHC's reliance on the Debtor's representations was reasonable.

87. NHC reasonably relied on the Debtor's false representations in making progress payments to Centaur because NHC reasonably believed that Centaur had completed the work entitling Centaur to such progress payments, or would complete the work with the funds NHC provided.

88. NHC's reliance was reasonable because it could observe the completion of certain work by various subcontractors, without knowledge that the Debtor did not pay those subcontractors base contract amounts and without knowledge that Centaur had agreed to change orders with certain subcontractors above base contract amounts.

89. Again, to the extent that some work that was the subject of the payment applications was completed by Centaur's subcontractors, Centaur was required to pay the subcontractors for their work rather than divert the money to other personal or business uses.

90. NHC reasonably relied on these false statements by not terminating the Contract until well after July 24, 2019.

91. The Debtor's representations caused NHC to sustain a loss.

92. NHC sustained a loss, and the District Court awarded $22,272,124.34 in compensatory damages and $1,500,000.00 in punitive damages, for a total of $23,772,124.34, in favor of NHC and against the Debtor on account of NHC's losses.

93. The Debtor's indebtedness to NHC as set forth in the Amended Judgment is not dischargeable under section 523(a)(2)(A) of the Bankruptcy Code on account of the Debtor's false pretenses, false representations, and actual fraud.

## COUNT II
### Determination of Nondischargeability of a Debt
### Under 11 U.S.C. § 523(a)(4)

94. NHC incorporates its prior allegations as if fully set forth herein.

95. Between April 16, 2018 and September 5, 2019, the Debtor was engaged through Centaur as the general contractor for the Project.

96. The Debtor was a manager of Centaur and acted as the Chief Executive Officer of Centaur.

97. The Debtor acted as Centaur's representative throughout the Project.

98. The Debtor was responsible for managing the work of subcontractors, petitioning NHC for funds for work completed, and then distributing those funds to the subcontractors to pay them for their completed work.

99. The Debtor diverted over $22 million of NHC's assets from the Project while failing to pay the subcontractors on the Project.

100. The Debtor acted as a fiduciary to NHC as to Centaur's handling of NHC's assets in connection with the Contract.

101. The Debtor was found liable for fraud.

102. The Debtor committed fraud while acting in a fiduciary capacity.

103. The Debtor fraudulently and wrongfully took and carried away NHC's assets.

104. The Debtor intended to convert NHC's assets to his own use.

105. The Debtor did so without the consent of NHC.

106. The Debtor's actions constitute larceny.

107. In the alternative to larceny, the Debtor lawfully came into possession of NHC's assets through the submission of requests for payment.

108. The Debtor misappropriated NHC's assets for his own benefit.

109. The Debtor did so with fraudulent intent or deceit.

110. The Debtor's actions constitute embezzlement.

111. The Debtor's indebtedness to NHC as set forth in the Amended Judgment is not dischargeable under section 523(a)(4) of the Bankruptcy Code on account of the Debtor's fraud while acting in a fiduciary capacity, embezzlement, and larceny.

## COUNT III
### Determination of Nondischargeability of a Debt
### Under 11 U.S.C. § 523(a)(6)

112. NHC incorporates its prior allegations as if fully set forth herein.

113. Between April 16, 2018 and September 5, 2019, the Debtor submitted false invoices in order to defraud NHC of over $22 million in connection with the Project.

114. The Debtor acted with the intent to harm NHC or acted with the intent to enrich himself or Centaur without regard to the effect of his actions on NHC.

115. The Debtor's actions were willful and malicious.

116. As a result of the Debtor's actions, NHC suffered an injury, and the District Court awarded $23,772,124.34 in damages on account of that injury in favor of NHC and against the Debtor.

117. The Debtor's indebtedness to NHC as set forth in the Amended Judgment is not dischargeable under section 523(a)(6) of the Bankruptcy Code on account of the Debtor's willful and malicious injury to NHC.

## RESERVATION OF RIGHTS

118. NHC specifically reserves the right to amend this complaint to add or bring any and all other causes of action it may maintain against the Debtor including, without limitation, causes of action arising out of the same transactions at issue in this complaint, to the extent discovery in this action or further investigation by NHC reveal such further causes of action.

WHEREFORE, NHC respectfully requests that the Court enter judgment in its favor and against the Debtor as follows:

A. Enter judgment that all sums due and owing to NHC under the Amended Judgment as of the Petition Date constitute a nondischargeable debt under section 523(a)(2), (4), and (6) of the Bankruptcy Code;

B. Award of pre- and post-judgment interest; and

C. Grant any other relief as the Court deems just and proper.

                                                Respectfully submitted,

Dated: January 9, 2026                */s/ Patrick R. Akers*
                                                James T. Markus (25065)
                                                Patrick R. Akers (54803)
                                                MARKUS WILLIAMS LLC
                                                1775 Sherman Street, Suite 1950
                                                Denver, Colorado 80203
                                                (303) 830-0800
                                                (303) 830-0809 (facsimile)
                                                jmarkus@markuswilliams.com
                                                pakers@markuswilliams.com

                                                Daniel P. Jackson (IL 6289813)
                                                Zachary J. Watters (IL 6310675)
                                                VEDDER PRICE P.C.
                                                222 North LaSalle Street
                                                Chicago, IL 60601
                                                (312) 609-7500
                                                (312) 609-5005 (facsimile)
                                                djackson@vedderprice.com
                                                zwatters@vedderprice.com

                                                *Counsel for NHC LLC*